UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PERSONAL PHYSICIAN CARE, P.A.,

    Plaintiff,

v.            Case No:  6:16-cv-452-Orl-28DAB

FLORIDA PHYSICIANS TRUST, LLC,
and FLORIDA ACCOUNTABLE CARE
SERVICES, LLC,

    Defendants.

_____

## ORDER

Plaintiff Personal Physician Care, P.A. ("Plaintiff"), a professional association of primary care physicians, filed this action in state court in February 2016, alleging four claims under Florida common law against Defendants Florida Physicians Trust, LLC, ("Physicians Trust") and Florida Accountable Care Services, LLC ("FACS").  Defendants removed the case to this Court in March 2016, asserting two bases for federal subject-matter jurisdiction:  (1) the federal question jurisdiction statute (28 U.S.C. § 1331) and (2) the federal officer/agency removal statute (28 U.S.C. § 1442).  (Notice of Removal, Doc. 1).

Now before the Court is Plaintiff's Motion to Remand and for Attorneys' Fees (Doc. 16) and Defendants' Response (Doc. 20).  Having considered the parties' filings, the Court concludes that this case must be remanded to state court and that Plaintiff should be awarded fees and costs incurred in connection with the removal.

## I.    Background

As stated in the Complaint, "[t]his matter concerns Defendants' misappropriation of Medicare Shared Savings Program . . . funds delivered to [Physicians Trust] for the benefit of and distribution to Plaintiff." (Doc. 2 ¶ 1).  The Medicare Shared Savings Program was established by the Affordable Care Act.[1]  (Id. ¶ 8).  Eligible Medicare providers can participate in the Medicare Shared Savings Program by creating or participating in an "accountable care organization."  (Id. ¶ 9).  Medicare providers who participate in an accountable care organization receive payment as usual under Medicare fee-for-service rules, and on top of that, if the accountable care organization attains certain benchmark savings and meets quality and cost containment standards in a particular "performance year," the Centers for Medicare & Medicaid Services ("CMS") pays additional monies to the accountable care organization in the form of an "Earned Shared Savings Payment." (Id. ¶ 13).

Defendant Physicians Trust is an accountable care organization that participates in the Medicare Shared Savings Program. (Id. ¶¶ 4 & 7).  Defendant FACS "is an affiliate of," and operates, Physicians Trust. (Id. ¶¶ 5 & 18).  In January 2012, Plaintiff and Defendants contracted for Plaintiff's participation in Physicians Trust, (id. ¶ 14), and Plaintiff participated in Physicians Trust from 2012 through 2014, (id. ¶ 7).

The parties' Agreement (Ex. A to Doc. 2) provides for an initial period of three years. (Id. ¶ 15).  The Agreement "entrusts [Physicians Trust] with the stewardship over the proceeds and distribution of" any Earned Shared Savings Payments earned.  (Id. ¶ 16). Additionally, the Agreement provides that if Physicians Trust becomes eligible to receive

---

[1] See 42 U.S.C. § 1395jjj.

an Earned Shared Savings Payment from CMS, 70% of that payment will be distributed among the Physicians Trust members based on the proportionate savings contributed by each member to the total distributable savings; the remaining 30% is to be paid to FACS for the operation of Physicians Trust. (Id. ¶ 18).

For Performance Year 2014, Physicians Trust met the minimum savings threshold, and CMS determined that Physicians Trust was entitled to receive an Earned Shared Savings Payment of $2,702,318.00 for that year. (Id. ¶¶ 43, 49). Defendants received a payment in that amount from CMS in September 2015. (Id. ¶ 54).

According to Plaintiff, Defendants did not share the proceeds of the 2014 Earned Shared Savings Payment with the Physicians Trust participants in accordance with the terms of the Agreement. (Id. ¶ 56). Seventy percent—$1,891,622.60—of the $2,702,318.00 payment should have been distributed among the provider members based on their proportionate savings contributions, which Plaintiff claims entitled it to receive $262,751.93—13.89% of that amount. (Id. ¶¶ 57, 59). Physicians Trust did not contact Plaintiff to distribute Plaintiff's share of the payment, as required by the Agreement and by law. (Id. ¶ 60).

In September 2015, Plaintiff requested from Defendants its share of the 2014 Earned Shared Savings Payment, but initially Plaintiff received no response. (Id. ¶¶ 62–63). Eventually, on November 20, 2015, Defendants' Vice President of Operations and Legal Affairs sent a letter to Plaintiff along with a check for $41,660.44, which purportedly represented Plaintiff's share of the 2014 payment. (Id. ¶ 64). The letter stated that

Plaintiff's portion was "prorated by the number of days [Plaintiff] participated in 2014."[2] (Id. ¶ 65; Letter, Ex. B to Compl.). Plaintiff disputed the amount determined by Defendants, insisted that proration was not appropriate because Plaintiff had participated in Physicians Trust for all of 2014, and requested access to information regarding how Plaintiff's proportionate share had been determined. (Id. ¶¶ 66–67). Defendant refused to provide access to such records, even though the parties' Agreement provides Plaintiff a right to access payment-related records. (Id. ¶ 69).

On February 17, 2016, Plaintiff filed this suit in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, alleging four claims under Florida law: breach of contract, breach of fiduciary duty, breach of implied-in-fact contract, and unjust enrichment. (Compl., Doc. 2). Defendants removed the case to this Court on March 17, 2016, asserting that removal is proper under 28 U.S.C. §§ 1331 and 1441 because Plaintiff's claims "arise from federal law" and under 28 U.S.C. § 1442 because Defendant Physicians Trust "is a federally based care organization, under contract with the Centers for Medicare & Medicaid Services, that generates earned federal savings for the United States." (Notice of Removal, Doc. 1, at 3). Plaintiff now moves to remand, arguing that neither of Defendants' asserted bases for removal is valid and that this Court lacks subject-matter jurisdiction over this case. (Mot. Remand, Doc. 16). Plaintiff also argues that

---

[2] On March 28, 2014, Plaintiff delivered notice of intent to terminate its participation in Physicians Trust, with that termination to be effective at the close of business on December 31, 2014. (Compl. ¶ 31). In a letter dated either July 1, 2014 or July 1, 2015—the Complaint gives the year as 2015 but from the context it appears that the letter may have been dated July 1, 2014 instead—Defendants told Plaintiff that Plaintiff had been removed from the roster of Physicians Trust participants, effective immediately. (Id. ¶ 36). Nevertheless, Defendants continued to report to CMS that Plaintiff was a Physicians Trust participant for the entirety of performance year 2014. (Id. ¶ 37).

Defendants' attempt to remove this case to federal court lacked any objectively reasonable basis and that therefore Plaintiff should be awarded attorneys' fees and costs incurred as a direct result of the improper removal.

## II.    Discussion

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009). In removing this case from state court, Defendants relied on two separate alleged bases of federal subject-matter jurisdiction:  (1) "arising under" jurisdiction under 28 U.S.C. § 1331 and (2) federal officer jurisdiction under 28 U.S.C. § 1442. These theories are addressed in turn.

### A.    Federal Question Jurisdiction (28 U.S.C. §§ 1331 & 1441)

The general removal statute, 28 U.S.C. § 1441, provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As their first basis for removal, Defendants assert that "Plaintiff's claim arises from federal law" within the meaning of 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." (Doc. 1 at 3). Plaintiff disputes this assertion.

"[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986) (quoting Franchise Tax. Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 9–10 (1983)). "[A] suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" Vaden v. Discover Bank, 556 U.S. 49, 60 (2009) (second alteration in original) (quoting Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908)). "[T]he existence of a federal defense normally does not create statutory 'arising under' jurisdiction." Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004).

Most cases that come within the "arising under" jurisdiction of 28 U.S.C. § 1331 are "those in which federal law creates the cause of action." Merrell Dow, 478 U.S. at 808 (citation omitted). But, in addition to cases involving a cause of action created by federal law, "[t]here is . . . another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). That is, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." Id. "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," however. Merrell Dow, 478 U.S. at 813. Rather, where state law creates the cause of action, "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one [of the claims] is 'really' one of federal law." Franchise Tax Bd., 463 U.S. at 13.

6

Here, Defendants do not assert that federal law creates any of Plaintiff's causes of action.[3] (See Doc. 20 at 10). Instead, they rely on the second category of "arising under" jurisdiction—founded on a significant question of federal law—and agree with Plaintiff's assertion that the appropriate standard for resolution of the "arising under" issue is that set forth in the Supreme Court's decision in Gunn v. Minton, 133 S. Ct. 1059 (2013). (See Doc. 16 at 15–20; Doc. 20 at 10). In Gunn, the Supreme Court held that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." 133 S. Ct. at 1065. Defendants have not established these elements and have not met their burden of establishing "arising under" jurisdiction in this case.

First, Defendants have not established that a federal issue is "necessarily raised" here. Defendants only vaguely assert that Plaintiff's "claim"—they make no distinction among the four counts—"[a]t its essence . . . is a challenge to the authority vested in Defendants to distribute Shared Savings among its participants." (Doc. 20 at 10). Defendants allege that "[t]his authority is established by 42 [CFR part] 425," (id.),[4] which is where the regulations for the Medicare Shared Savings Program are codified. Defendants cite 42 C.F.R. § 425.104 in particular for the proposition that one of an accountable care

---

[3] In the "federal officer removal" section of their response, Defendants vaguely assert that "[a] review of the facts and circumstances surrounding Plaintiffs' claims indicate [sic] that all of the claims 'arise under' the Medicare Act." (Doc. 20 at 9). To the extent that by this statement Defendants are asserting that the Medicare Act "created" any of Plaintiff's claims, the Court rejects this contention.

[4] Defendants cite "42 U.S.C. 425 et seq." here, but it appears that they intended to cite the Code of Federal Regulations rather than the United States Code.

organization's primary functions is "[r]eceiving and distributing share savings."[5]  However, this language from this regulation does not establish that a federal issue is "necessarily raised" here.

Defendants also assert that they "are not only authorized to generate Shared Savings *for the United States* but they are also authorized to distribute their portion, as mandated by the rules promulgated by CMS."  (Doc. 20 at 10 (emphasis in original)). Defendants do not explain how CMS's rules "necessarily raise" a federal issue here.  At best, Defendants may be (albeit vaguely) asserting a defense based on federal law, but removal under 28 U.S.C. § 1441 cannot be based on a defense.  See Merrell Dow, 478 U.S. at 808 ("A defense that raises a federal question is inadequate to confer federal jurisdiction.").

Although Plaintiff concedes the second Gunn v. Minton element—"actually disputed"[6]—Defendants have not established the third or fourth elements.  Not only have

_____

[5] This regulation is titled "Legal entity."  Subsection (a) of it provides in full:

(a) An [accountable care organization] must be a legal entity, formed under applicable State, Federal, or Tribal law, and authorized to conduct business in each State in which it operates for the purposes of the following:

(1) Receiving and distributing shared savings.

(2) Repaying shared losses or other monies to be owed to CMS.

(3) Establishing, reporting, and ensuring provider compliance with health care quality criteria, including quality performance standards.

(4) Fulfilling other [accountable care organization] functions identified in this part.

42 C.F.R. § 425.104(a).

[6] Plaintiff "concedes, for the purposes of th[e] Motion to Remand, that if a federal issue is necessarily raised in this case it will be 'actually disputed.'"  (Doc. 16 at 17).

8

Defendants failed to establish a "necessarily raised" federal issue, but they also fall far short of establishing a "substantial" federal issue. See Gunn, 133 S. Ct. at 1066 ("[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit . . . .The substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole."). Plaintiff has asserted only "garden variety" theories of recovery under state common law, and resolving any federal issue presented here would disrupt the federal-state balance approved by Congress even if Defendants had established the other three elements. Defendants have not established "arising under" jurisdiction.

**B.     Federal Officer/Agency Removal (28 U.S.C. § 1442)**

As their second basis for removal, Defendants rely on the federal officer/agency removal statute, which provides in part:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.

28 U.S.C. § 1442(a)(1). Defendants assert that removal was proper under this provision because (1) "the Secretary of Health and Human Services . . . is the real party in interest in this suit"; (2) Defendants are "Medicare Contractors" and as such "were acting under a federal officer (the Secretary) for purposes of this suit"; and (3) "Defendants will assert colorable federal defenses." (Doc. 20 at 5). Plaintiff, on the other hand, argues that 28 U.S.C. § 1442 does not support federal subject-matter jurisdiction here, and the Court agrees.

As noted in part II.A. supra, generally in order for a case to be removable to federal court it must be a "civil action brought in a State court of which the district courts of the United States have original jurisdiction" as provided in 28 U.S.C. § 1441(a). Jefferson Cty., Ala. v. Acker, 527 U.S. 423, 430 (1999).  The federal officer removal statute is an exception to this requirement, and if its terms are met a suit is removable "'regardless of whether the suit could originally have been brought in a federal court.'"  Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424, 1427 (11th Cir. 1996) (quoting Willingham v. Morgan, 395 U.S. 402, 406 (1969)).  In other words, "[i]f the statutory prerequisites are satisfied, section 1442(a)(1) provides an independent federal jurisdictional basis." Id.

Moreover, while "the federal question ordinarily must appear on the face of a properly pleaded complaint" in order for a case to removable and "an anticipated or actual federal defense generally does not qualify a case for removal," "[u]nder the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." Acker, 527 U.S. at 431.  Indeed, "federal officer removal must be predicated on the allegation of a colorable federal defense." Mesa v. California, 489 U.S. 121, 129 (1989).  "[I]ssues generally thought to be defensive in character . . . provide [§ 1442's] raison d'être."  14C Charles M. Wright et al., Federal Practice and Procedure § 3726 (4th ed. 2009).

Defendants contend that "the Secretary of Health and Human Services is the real party in interest" in this case and that accountable care organizations—such as Defendant Physicians Trust—are "Medicare Contractors" subject to comprehensive regulations of the

Secretary. (Doc. 20 at 6).[7] They claim that these regulations, as well as "manuals, guidelines and other issuances by the Secretary . . . are binding on them in the discharge of their contractual responsibilities in the day-to-day administration of the Medicare [Shared Savings P]rogram." (Id.). Defendants also note that accountable care organizations are required by 42 C.F.R. § 425.200 to enter into a three-year contract with CMS, and they argue that their actions are "performed under the Secretary's control and direction." (Id.).

The Court rejects Defendants' assertions that the Secretary is the real party in interest here and that Defendants are "Medicare Contractors" or "fiscal intermediaries." Defendants cite 42 U.S.C. §§ 1395h and 1395u and several cases involving "Medicare Administrative Contractors" or "fiscal intermediaries" under these sections in support of their "contractor" argument, but this authority does not support Defendants' position.

Sections 1395h and 1395u contain provisions relating to the administration of, respectively, Medicare part A and Medicare part B.  These sections provide that such administration "shall be conducted through contracts with medicare administrative contractors under section 1395kk-1 of" Title 42.  Section 1395kk-1, in turn, provides that "[t]he Secretary may enter into contracts with any eligible entity to serve as a medicare administrative contractor with respect to the performance of" payment functions, provider services functions, and other functions relating to the administration of Medicare parts A and B. 42 U.S.C. § 1395kk-1(a)(1). "Medicare administrative contractor" is defined as "an agency, organization, or other person with a contract under this section." Id. § 1395kk-1(a)(3)(A). Other CMS guidance defines "medicare administrative contractor" as "a private

---

[7] Defendants list these arguments under separate headings but then combine assertions regarding both arguments under both headings.  (See Doc. 20 at 6).

health care insurer that has been awarded a geographic jurisdiction to process Medicare Part A and part B . . . medical claims."[8] Medicare Administrative Contractors have in the past been referred to as "fiscal intermediaries" or "carriers."[9]

Physicians Trust is not a Medical Administrative Contractor, fiscal intermediary, or carrier under these statutory provisions. Instead, it is an accountable care organization under 42 U.S.C. § 1395jjj. Unlike Medicare Administrative Contractors, fiscal intermediaries, and carriers, accountable care organizations do not "administer" Medicare. Accountable care organizations are described in the Medicare literature as "a new type of health care entity,"[10] and they *participate* in the Medicare Shared Savings Program rather than *administering* it. Accountable care organizations become "eligible to receive payments for shared savings" if they meet the Secretary's quality performance standards, 42 U.S.C. § 1395jjj(a)(1)(B), but they distribute the payments that they receive from CMS to their own members. And, although accountable care organizations are required to "enter into an agreement with the Secretary to participate in the program for not less than a 3-year period," id. § 1395jjj(a)(2)(B), must follow regulations, and must comply with other requirements in order to be eligible for a Shared Savings payment, these circumstances are not sufficient to render Physicians Trust "acting under the Secretary" or "acting on the

---

[8] What is a MAC, Centers for Medicare & Medicaid Services, https://www.cms.gov/Medicare/Medicare-Contracting/Medicare-Administrative-Contractors/What-is-a-MAC.html (last visited Aug. 15, 2016).

[9] Medicare Administrative Contractors, Centers for Medicare & Medicaid Services, https://www.cms.gov/medicare/medicare-contracting/medicare-administrative-contractors/medicareadministrativecontractors.html (last visited Aug. 15, 2016).

[10] Centers for Medicare and Medicaid Services, Summary of the June 2015 Final Rule Provisions for Accountable Care Organizations under the Medicare Shared Savings Program, ICN 907404 (March 2016), at 2, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/sharedsavingsprogram/Downloads/ACO_Summary_Factsheet_ICN907404.pdf

Secretary's behalf." Cf. Watson v. Philip Morris Cos., 551 U.S. 142, 153 (2007) ("A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored."); In re Methyl Tertiary Butyl Ether Products Prods. Liab. Litig., 488 F.3d 112, 132 (2d Cir. 2007) ("[W]e do not believe [42 U.S.C. § 1442] was intended to be construed so broadly that it would federalize a broad spectrum of state-law tort claims against entities regulated by—though not acting under—officers or agencies of the United States."). The cases that Defendants cite do not lend support to Defendants' position either; they pertain to "medical administrative contractors" or "fiscal intermediaries" who administer Medicare part A or part B under 42 U.S.C. § 1395h or 42 U.S.C. § 1395u.[11]

In sum, the Court rejects Defendants' contentions that they are "Medicare contractors" or "contractors of the United States" in any sense relevant to subject-matter jurisdiction and that the Secretary of Health and Human Services is the real party in interest here. This determination is dispositive of the propriety of § 1442 removal. Moreover, even if Defendants had persuaded the Court that they were acting under an officer of the United States, they also would have to offer a colorable federal defense, and they have failed to do that as well. Defendants assert sovereign immunity, official immunity, and the federal

---

[11] See Heckler v. Cmty. Health Servs. of Crawford Cty., Inc., 467 U.S. 51, 54 (1984) (describing fiscal intermediary under 42 U.S.C. § 1395h); Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 69 (2d Cir. 1998) (noting that the defendant-appellee was a private insurance company who acted as a "carrier" in administering Medicare part B"), and Midland Psychiatric Assocs. v. United States, 145 F.3d 1000, 1004 (8th Cir. 1998) (noting that carrier under 42 U.S.C. § 1395u "is an officer or employee of the Government when it acts as a Medicare carrier"), cited in Doc. 20 at 6.

contractor defense.  None of these asserted defenses is colorable, though, because each depends on Defendants' failed "contractor" argument; Defendants again rely on inapposite cases involving Medicare Administrative Contractors and fiscal intermediaries. [12] Defendants have not met their burden of establishing that removal of this case under 28 U.S.C. § 1442 was appropriate.

### C.    Attorney's Fees

In its motion, Plaintiff also requests an award of attorney's fees and costs pursuant to 28 U.S.C. § 1447(c), which provides in part that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Defendants note in their response that Plaintiffs request attorney's fees, (see Doc. 20 at 2), but they make no argument in opposition to the request.

"Section 1447(c) authorizes courts to award costs and fees, but only when such an award is just."  Martin v. Franklin Capital Corp., 546 U.S. 132, 138 (2005).  There is no presumption for or against an award of fees under this provision. Id. at 139.  The Supreme Court established the standard in Martin:  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Id. at 141.

The Court agrees with Plaintiff that Defendants lacked an objectively basis for seeking removal.  First, Defendants' "arising under" jurisdiction argument was wholly devoid of merit.  Defendants failed to identify a federal basis for any claim in Plaintiff's

---

[12] See Neurological Assocs.—H.Hooshmand, M.D., P.A. v. Bowen, 658 F. Supp. 468, 469 (S.D. Fla. 1987) (noting that "district courts lack jurisdiction over Medicare fiscal intermediaries under the doctrine of sovereign immunity"); Pani, 152 F.3d 67 (regarding sovereign immunity of fiscal intermediary), cited in Doc. 20 at 7–8.

complaint, nor did they specify a "significant question of federal law" as to any of those claims.  They lacked an objectively reasonable basis for relying on 28 U.S.C. § 1331 as ab basis for federal subject-matter jurisdiction.  Second, it was not objectively reasonable for Defendants to believe that Defendant Physicians Trust is a federal officer or acting under a federal officer.  Accordingly, Plaintiff will be awarded its attorney's fees and costs incurred in connection with the improper removal of this case from state court.

## III.   Conclusion

In accordance with the foregoing, it is **ORDERED** as follows:

1.     Plaintiff's Motion to Remand and for Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c) (Doc. 16) is **GRANTED** in all respects.

2.     This case is hereby **REMANDED** to the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, *Personal Physician Care, P.A. v. Florida Physicians Trust, LLC et al.*, Case No. 2016-CA-001492-O.

3.     This Court retains jurisdiction solely to determine the amount of fees and costs to be awarded to Plaintiff under 28 U.S.C. § 1447(c).  Plaintiff shall file documentation establishing the amount of fees and costs to which it is entitled **no later than Friday, August 26, 2016**.  If Defendants contest the amount claimed, they may respond **within fourteen days of Plaintiff's filing**.

**DONE** and **ORDERED** in Orlando, Florida, on August  _16_ , 2016.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record